### WEST'S EX'RS v. CAMERON COUNTY.
(Nos. 7883, 7908.)

Court of Civil Appeals of Texas. San Antonio.
Feb. 1, 1928.

Rehearing Denied March 14, 1928.

1. **Public lands** ⚖️173(14)—**Attempted acceptance by county of proposal of defaulting purchaser of school lands to discharge debt by payment of interest and one-half of principal due held settlement agreement, and not new sale (Const. art. 3, § 55, and art. 7, § 6).**

Where, after sale of school land under Const. art. 7, § 6, and purchaser's default in payments, commissioners' court accepted purchaser's offer to pay interest due and one-half sum of the principal originally agreed on, proceeding was one of compromise and settlement on part of county, and did not constitute a second sale of the land on different terms, and agreement was therefore void under article 3, § 55, which denies power of Legislature to release or extinguish or to authorize releasing or extinguishing in whole or in part of indebtedness due state or county.

2. **Public lands** ⚖️173(14)—**County's settlement of debt due from defaulting purchaser of school lands for amount of interest and one-half principal held void (Const. art. 3, § 55, and art. 7, § 6).**

Attempted acceptance by commissioners' court of county of proposal of purchaser, who defaulted in payment for school lands sold under Const. art. 7, § 6, to discharge debt by paying interest and one-half of principal due, held ineffectual; attempted settlement, though fully executed, being void under article 3, § 55.

3. **Interest** ⚖️37(1)—**Overdue interest installments on note, merely providing for 8 per cent. interest on principal, bear interest at rate of only 6 per cent. (Const. art. 16, § 11).**

Where note provides for interest at rate of 8 per cent. per annum without provision for interest on interest after annual installments become due, overdue interest installments will not be construed to bear interest at rate prescribed for principal, but, under Const. art. 16, § 11, would bear interest at rate no greater than 6 per cent. per annum.

4. **Public lands** ⚖️173(14)—**County's acceptance of past-due interest installments, without exacting interest thereon, in settlement of note to county which failed to provide for compounding interest, held authorized, precluding subsequent recovery of compound interest (Const. art. 3, § 55; Const. art. 7, § 6).**

Where note given county for purchase price of school land sold under Const. art. 7, § 6, was payable in 10 years, bearing interest at 8 per cent. per annum, payable annually in advance, without provision for interest on past-due interest installments, county commissioners' court, though unauthorized to make settlement by discounting principal sum, had authority to accept interest installments after their due date without exacting interest thereon, without infraction of article 3, § 55, which forbids releasing or extinguishing indebtedness due county, and county, in subsequent suit on note to set aside the settlement, could not recover interest on such interest installments.

5. **Public lands** ⚖️173(14)—**Note to county, payable in 10 years, bearing 8 per cent. interest, payable annually in advance, held to bear simple interest from due date until paid (Const. art. 3, § 55, and art. 7, § 6).**

Note given county for purchase price of school land sold under Const. art. 7, § 6, which provided for payment of principal in 10 years, with interest at 8 per cent. per annum, payable annually in advance, held not to require payment of interest on unpaid annual installments of interest after maturity of note, in county's suit to recover thereon and to set aside compromise settlement under article 3, § 55, there being no provision in note that interest should be paid annually after principal sum became due; but amount due on note was determined by adding simple interest from due date until paid.

6. **Payment** ⚖️66(5)—**Conclusive presumption of payment on account of lapse of time does not apply, where uncontroverted facts show nonpayment (Acts 1913, c. 123, amending Rev. St. 1911, arts. 5693–5695).**

Act 1913, c. 123, amending Rev. St. 1911, arts. 5693–5695, which provides for conclusive presumption of payment on account of lapse of time, does not apply, where uncontroverted facts show that claim sued on has not been paid.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Payment** ⚖══66(5)—**Public lands** ⚖══173 (14)—**Lapse of over 30 years held not to bar suit by county on purchase price note to set aside unauthorized settlement (Acts 1913, c. 123, amending Rev. St. 1911, arts. 5693–5695; Const. art. 3, § 55).**

Lapse of over 30 years before commencement of action by county to recover on note given for purchase of school lands *held* not to bar county's claim by reason of laches or limitation under Acts 1913, c. 123, amending Rev. St. 1911, arts. 5693–5695, where action was brought to set aside void compromise of debt in violation of Const. art. 3, § 55, which prevents Legislature from releasing or extinguishing indebtedness due state or county, since Legislature cannot, by creating conclusive presumption of payment, do, or permit to be done, indirectly what it is forbidden to do directly.

**8. Payment** ⚖══66(5)—**Legislature cannot make acts or laches of county conclusive proof of payment of note and cancellation of county's lien on property for purchase money (Const. art. 3, § 55).**

Legislature cannot, by statute, make certains acts or certain failure to act on part of the county, against which statutes of limitation have no force, constitute a conclusion of payment of note and cancellation of lien on property for purchase money, under Const. art. 3, § 55, and any such presumption may be removed by proof.

**9. Limitation of actions** ⚖══4(2)—**Payment** ⚖══66(5)—**Statute creating limitation period or rule of evidence cannot be permitted to release or extinguish obligations due state or county (Const. art. 3, § 55).**

Const. art. 3, § 55, providing that Legislature may not release or extinguish any part of indebtedness due state or county, extends to statute which would by its operation have the effect intended to be prevented, even though statute is made to operate as creating a period of limitation or rule of evidence.

**10. Evidence** ⚖══53 — **Presumptions arise only in absence of facts.**

It is only in case of absence of facts that a presumption of any kind can arise.

**11. Payment** ⚖══66(5)—**Conclusive presumption of payment created by statute of limitations, applicable to obligations, held mere surplusage (Acts 1913, c. 123, amending Rev. St. 1911, arts. 5693–5695).**

Acts 1913, c. 123, amending Rev. St. 1911, arts. 5693–5695, requiring that actions on obligations be brought within specified period, *held* to provide limitation on actions and not a rule of evidence, though bar of statute is stated to create a conclusive presumption of payment; provision creating conclusive presumption being mere surplusage.

**12. Public lands** ⚖══173(14)—**County, suing on note to set aside void compromise settlement thereof, was required to give credit for payments received under settlement (Const. art. 3, § 55, art. 7, § 6).**

In county's action on note given for purchase of school lands, sold pursuant to Const. art. 7, § 6, and to set aside settlement by coun-

ty commissioners, as unauthorized under article 3, § 55, county was required to give credit for payment of principal and interest which it accepted, notwithstanding payment was made pursuant to invalid compromise contract.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Suit by Cameron County against George W. West and others, in which the death of defendant named was suggested, and his executors substituted as defendants. From the judgment, the substituted defendants and plaintiff appeal. Reversed and rendered.

Williams, Neethe & Williams, of Galveston, Denman, Franklin & Denman, of San Antonio, and James R. Dougherty, of Beeville, for appellants.

A. H. Kirby, of Fort Worth, Davenport, West & Ransome, of Brownsville, King & York, of Austin, T. H. Miller, of George West, and Jno. T. Smith, of Austin, for appellee.

FLY, C. J. Appellee, in 1925, filed this suit as against George W. West and others, on a promissory note executed by West to appellee on June 10, 1884, in the sum of $20,-000, due in ten years, bearing interest at the rate of 8 per cent. per annum, payable annually in advance. Together with a recovery on the note, appellee sought to foreclose a vendor's lien on a league and one-half of land situated in Live Oak county, for the purchase money of which the promissory note was given and a vendor's lien reserved in the deed executed to the land by Cameron county. West filed a general demurrer, pleaded payment, and invoked presumption of payment by a lapse of more than 30 years. The other parties, who were persons who had purchased parts of the land, need not be further mentioned herein as neither of them has perfected an appeal. The court decided the cause without the aid of a jury, and rendered judgment in favor of appellee as against the executors of the estate of George W. West, he having died before the trial, and administration of his estate begun, in the sum of $102,206.33, and a foreclosure of the vendor's lien on the land in Live Oak county. The executors of the estate appealed, as well as Cameron county. The last named appeal is docketed in this court as Cameron County v. George W. West et al., numbered 7908, which has been consolidated in this court with cause No. 7883, and the consolidated case is now being considered.

The facts are that in 1884 Cameron county owned 6,642 acres, more or less, of school land in Live Oak county, and George W. West made an offer of $20,000 for the land, which was accepted by the commissioners' court of Cameron county. The purchase money was to be paid in ten years, the debt being evidenced by the promissory note of West for $20,000, bearing interest at 8 per cent. payable

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

annually in advance, a vendor's lien being retained on the land to secure the debt in the deed executed to West by the county judge. The deed and note were dated June 10, 1884. On September 18, 1884, West paid as interest the sum of $1,600; June 11, 1886, $1,600; on June 1, 1887, $500; on July 10, 1889, $3,600; and June 21, 1894, $1,000—making in the aggregate the sum of $8,300. This was the status of the debt when, on February 12, 1895, West offered to pay in full acquittance of the debt the sum of $10,000 on the principal and interest in the sum of $8,460. The offer was attempted to be accepted by the commissioners' court; its order of acceptance being as follows:

"In the opinion of the court that West is not only unable to pay the full amount owing upon his said promissory note as above stated, but such amount of money cannot be made under execution against him, and that the only available property out of which the collection of the debt to this county could be enforced on the two grants of a league and a half of a league respectively, hereinbefore specified, and upon which the vendor's lien exists to secure the payment of said note, and that the said land is not probably worth, and would not bring at execution sale more than, $1 per acre. And it further appearing to the court that the enforcement of said vendor's lien would be accompanied with great expense to this county, and in the opinion of the court the said two tracts of land are not worth, and would not sell for, the said principal sum of $10,000 now offered by the said West, and would not in any possible event bring the said sum now offered by the said West for the settlement of said debt and in consideration of a conveyance of the title in fee simple to said two grants, accordingly it is considered by the commissioners' court of Cameron county that it is to the interest, in all things in the premises of said county of Cameron and its school fund, that the proposition of said West to pay said aggregate sum of $18,460 in settlement of said indebtedness be, and the same is hereby, accepted, and Hon. Thomas Carson, county judge of Cameron county, Tex., is hereby expressly made, constituted, and appointed the agent and attorney in fact of this county of Cameron, and, as such, expressly authorized and directed upon the receipt by him from the said George W. West of said sum of $18,460 to deliver to him, the said West, the said promissory note for $20,000 above mentioned, and executed by the said West as satisfied in full, and to release said vendor's lien now existing to secure its payment, and also to execute and deliver to the said West a deed of conveyance in fee simple with general covenants of warranty of the said grant of one league and said grant of one-half of one league of land as heretofore described."

In obedience to that order, the county judge executed the following instrument:

"That, whereas, heretofore, to wit, on the 12th day of February, A. D. 1895, the commissioners' court of Cameron county made and entered its certain order accepting from George W. West the sum of $18,460, in full settlement of all principal and interest now owing upon the promissory note of the said West of date June 10, 1884, and due June 10, 1894, for the principal sum of $40,000 and bearing 8 per cent. interest, payable annually, and did, in consideration of said sum of $18,460, authorize and direct the undersigned county judge of Cameron county to deliver to the said George W. West his said promissory note aforementioned, and to execute to him, the said George W. West, the release of the vendor's lien and the deed of conveyance hereinafter set forth:

"Now, therefore, I, Thomas Carson, county judge of Cameron county, Texas, in consideration of said sum of $18,460 cash to me in hand paid for the county of Cameron by George W. West of Live Oak county, Tex., have and by these presents do acknowledge full payment and satisfaction of said promissory note for $20,000 above mentioned, and do release the vendor's lien which was retained to secure the payment of said note in the deed of conveyance of date June 10, 1884, made by James Haynes, county judge of Cameron county, to the said George W. West of the lands hereinafter described, which said conveyance is of record in Live Oak county deed registry in Book H. pp. 320 to 326, inclusive, and in consideration of the premises and by virtue of the authority given to me by said order of said commissioners' court entered as aforesaid, in the name of the county of Cameron in the state of Texas, I grant, bargain, sell, and convey unto the said George W. West, his heirs and assigns, those two tracts of land which are more fully described in said deed recorded in Book H, pp. 320 and 326, inclusive, of Live Oak county deed registry, to which reference is here made."

And said Thomas W. Carson, county judge, at the same time delivered to said George W. West said vendor's lien promissory note above described, executed and delivered by said West to the proper officials of Cameron county, on June 10, 1884, in payment for said school lands; whereupon said George W. West drew a pen and ink through his signature on said note, and wrote beneath said signature the words "Paid in full."

At the same time the promissory note for $20,000 was delivered to West, he paid $18,460 to Cameron county.

[1] The facts of this case fail to evidence a cancellation of the original sale by the county and a second sale of the land to West on different terms. It was undoubtedly, as declared by the instruments copied herein, a plain, simple compromise under and by which the county attempted to accept a less sum in payment for the land than that originally agreed upon between the parties. The court in its order recites the inability of the vendee to pay, and of the county to collect, the full amount of the purchase money. The order says that it was considered "that it is to the interest, in all things in the premises of the county of Cameron and its school fund, that the proposition of said West to pay said aggregate sum of $18,460 in settlement of said indebtedness be and the same is hereby accepted." The whole proceeding was one of compromise and settlement, and not a new

sale of the property. If the compromise had been one between individuals, no one would have ever suggested that it was a cancellation of the old contract of sale and the making of a new sale. It was merely a compromise of the contract price of the land, whereby the county agreed to relieve West of the payment of $20,000 and accept in lieu of it $10,000. Full interest without compounding was paid, and the principal reduced by one-half. That is the sum and substance of the agreement, and the idea of a new sale is made to meet a constitutional requirement and some opinions of the Supreme Court thereunder.

The county was empowered by section 6 of article 7 of the state Constitution to "sell or dispose of its lands in whole or in part, in manner to be provided by the commissioners' court of the county"; that is, it may sell for cash or on credit as it may determine. Under that provision the sale in 1884 to George W. West was valid and binding, and doubtless, if afterwards West had asked for a cancellation of the contract of sale to him, the commissioners' court had the authority to have set aside the sale and to have sold to some one else. Those were the circumstances claimed to have existed under which the Court of Civil Appeals acted in the case of Waggoner v. Wise County, 17 Tex. Civ. App. 220, 43 S. W. 837. The facts did not fairly show the sale of the land by the county to another person, but rather the acceptance as its creditor of a man who had bought from the vendee of the county and assumed his indebtedness to the county. The court, however, held that the transaction was, "in effect, an election on the part of the vendor trustees to reclaim the land, and sell it to another party upon apparently more advantageous terms, as the security could be more easily, quickly, and cheaply foreclosed." The sophistry of the opinion is apparent, and yet it met with the approval of the Supreme Court, not only by the refusal of an application for a writ of error, but by being afterwards cited and followed in Delta County v. Blackburn, 100 Tex. 55, 93 S. W. 420. Putting aside any question as to the correctness of these opinions, the case now under consideration does not come within the purview of either of them. We are willing to accept the doctrine that the commissioners' court "is invested with the power over the title remaining in it which an ordinary grantor would usually have under a like form of contract; that its power to cancel the sale for default in performance by the vendee, to resume its title and to resell would be as perfect as would be the power of an individual under like circumstances," but no such case is presented by the facts before this court, and we doubt that any such state of facts was before the court in Waggoner v. Wise County. No one will doubt the power of a commissioners' court to cancel a sale made

by it, resume control of the land, and subsequently sell it to another, but that ruling would not give the power, in the face of the Constitution, to compromise a debt for land so as to give the purchaser one-half of the purchase money for which the public school lands were sold. By no stretch of imagination or specious pleading can the facts of this case be construed to be a cancellation of one sale and a contract for another and different sale.

[2] The Constitution of Texas, art. 3, § 55, is:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any incorporation or individual, to this state, or to any county or other municipal corporation therein."

That provision is not only plain and simple, but wise and beneficent. It has in view the protection of the state and its subdivisions from the unwise or corrupt acts of officers who for various reasons might desire to be generous to the individual at the expense of the public. As said by the Supreme Court in Lindsey v. State, 96 Tex. 586, 74 S. W. 750:

"The subject-matter of the constitutional provision is the 'indebtedness, liability or obligation' of persons and corporations to state, county or other municipal corporations, and it is the releasing or extinguishing of such indebtedness, liability or obligation that is inhibited."

The Constitution does not inhibit the releasing of the indebtedness, but says "in whole or in part," no part of the "indebtedness, liability or obligation of any corporation or individual to this state, or to any county or other municipal corporation," can be released or extinguished. The Delta County v. Blackburn Case, herein cited and relied upon by appellant, sustains the view held by this court. It says:

"If the matter be regarded as the Commissioners regarded it, the conclusion is equally fatal to his defense. They simply attempted to release him from his alternative obligation to pay the whole debt at once or to continue to pay interest at the rate of seven per cent. which, under the Constitution, they had not the power to do. It is idle to say that they exerted the power given them to sell or dispose of the land. It had been sold and neither party intended that the sale should be disturbed. Such an extension of that power is not at all essential to its full and free exercise, but would make it impinge upon the other positive constitutional provisions which restrict the authority of the counties in dealing with such subjects and would open the door for many evasions."

These are words fitly spoken, and are "like apples of gold in pictures of silver." The language quoted was used in regard to a case where the commissioners' court, at the instance of the vendee, sought to lower the rate

of interest on purchase-money notes given for land bought by the vendee from Delta county, from 7 to 3 per cent. and it was held that the Constitution prevented the commissioners' court from making such reduction. In this case it was attempted to give the vendee one-half of the purchase money due on the school land. This action was and is inhibited by the Constitution. Riggins v. Post (Tex. Com. App.) 213 S. W. 600.

In the offer of compromise presented by George W. West to the commissioners' court, he asked that the debt of $20,000 be cut in half, and that a payment of $10,000 be accepted in full payment of the original principal, and that $8,460 interest be credited on unpaid interest. If no interest be calculated on the unpaid interest, the sum paid by West fully discharged the interest due at the time of attempted settlement. No provision is made in the promissory note for interest on deferred interest payments.

[3] There was no provision in the note for interest on interest after it became due, and the interest of 8 per cent. provided for the principal should not be made to apply to interest, the payment of which was delayed or defaulted. It was not contracted for, and a court desiring to do justice between the parties should not read the provision into the contract.

On August 11, 1891, an amendment to the state Constitution was adopted whereby it was provided that all contracts for a greater rate of interest than ten per centum per annum should be deemed usurious and that when no rate of interest is agreed upon the rate shall not exceed six per centum per annum. Article 16, § 11, Const. That provision went into effect on September 22, 1891. From that date the interest rate on sums on which no rate is provided for could not exceed 6 per cent. Interest payable at stated times on which default in payment is made would bear interest at the rate of only 6 per cent. per annum from the date it became due. Stone v. Pettus, 47 Tex. Civ. App. 14, 103 S. W. 413.

[4] The Constitution provides that, when no rate of interest is specified in the contract, the rate shall not exceed 6 per cent, and we do not deem it improper to hold that as to that legal rate not named in the contract the county commissioners' court could without an infraction of the terms of section 55, art. 3, of the Constitution, accept the interest after its due date, and not exact interest thereon, and evidently both parties in the settlement made in 1895 accepted the $8,460 paid as interest in full payment of all interest due. Compound interest was not provided for in the contract, and did not seem to be contemplated by the parties. We are of opinion, therefore, that, by the terms of the compromise, George West paid all of the interest due on the note up to the payments made in 1895, and that the $10,000 paid on the principal should be credited thereon, and that

from the date of that payment interest at 8 per cent. per annum should be calculated on the balance of the unpaid principal, that is, $10,000, and that no interest should be calculated on interest on which default was made beginning at the time that the annual interest of each year became due.

[5] We sustain appellants' contention that, after the maturity of the note, on June 10, 1894, interest should not be paid on unpaid annual installments of interest. There is no provision in the note indicating that interest should be paid annually, as provided in the note, and there are no words continuing payment of interest after the due date of the note for the principal. As said in the case of Wilson v. Kelly, 19 S. C. 160, construing the continuance of annual payment of interest after the due date of the note:

"These cases determine that the question is one of intention to be deduced from the terms of the instrument upon which the question arises. If the promise is to pay a given amount at or within twelve months from date, with interest *payable annually*, then, in order to give the words italicized any force or effect at all, it is necessary to conclude that the intention was that the interest shall continue to be payable annually after as well as before maturity; but if the promise is to pay in installments extending over a period of two or more years, or to pay the whole sum two or more years after date, with interest from date, payable annually, then those words may be given full force and effect without extending that mode of calculating the interest beyond the maturity of the bond, and hence the computation of interest with annual rests will then cease, and from that time only simple interest on the amount then due is chargeable, unless there are other words in the instrument—for example, 'until the whole be paid,' or other equivalent words—indicating an intention that interest should continue to be payable annually as long as the debt or any part thereof remained unpaid."

That case meets the facts of this case, in which the principal became due in June, 1894, and it would be unreasonable to suppose that it was intended that on the due date of the note the maker of the note was obliged by the terms of his contract to pay interest for twelve months in advance. The intention was that the principal be paid on June 10, 1894, and it was not contemplated that interest should be paid after that time. The note was due at any and all times after June 10, 1894. As said by the Rhode Island court in Wheaton v. Pike, 9 R. I. 132, 98 Am. Dec. 377, 11 Am. Rep. 227:

"We think, however, that upon principle, where, at least, the note is like the one here in suit, the rule does not properly extend to interest accruing after the principal has matured. After that, both the accruing interest and the principal are due, not on a particular day, but every day, until they are paid. The amount of the judgment in this case, therefore, should be the amount of the principal of the note, with simple interest thereon to the present day."

Numerous authorities support the decision. Following the decisions cited, which we conclude are reasonable and sound, we are of opinion that Cameron county should recover from the executors of the George W. West estate the sum of $10,000 principal, with interest thereon at 8 per cent. from February 12, 1895, to date.

[6-8] Presumptions are indulged in the absence of facts, and there is no basis for a conclusive presumption of payment of the balance of the note by reason of the lapse of time, because the uncontroverted facts show that it has not been paid. Neither can the lapse of over 30 years, filled with inaction on the part of Cameron county, bar the claim by laches or limitation. The law holds otherwise, although the rule in this instance has inflicted a great wrong upon the estate of George W. West, and will cause the payment of a large sum of money that could have to a great extent been avoided by prompt action upon the part of the county. There can be, and is, no reflection upon the citizenship of Cameron county in the premises, for, if public rights were not protected against the inaction, if not neglect, of officers, great injury might be suffered, and great wrong perpetrated on the people. A heavy burden has been placed upon the estate of a dead man by the long neglect to assert the rights of the county, but, under such circumstances, it cannot be avoided.

The Legislature cannot create a presumption of payment of a note given for purchase money, as against the state or any of its constituent parts, and permit commissioners' courts to accomplish by conclusive presumptions of payment arising from inaction and neglect of the public interest what they are forbidden by the Constitution to do directly. Const. art. 3, § 55. The Legislature cannot by statute make certain acts or a certain failure to act on the part of a county, against which statutes of limitation have no force, constitute a conclusion of the payment of a note and the cancellation of a lien on property for the purchase money. Any such presumption could be removed by proof. Clem v. Evans (Tex. Com. App.) 291 S. W. 871, 51 A. L. R. 1135. We will not attempt to reconcile the opinion in the case cited with that in McKinney v. Freestone County (Tex. Com. App.) 291 S. W. 532, in which it is held in one part of the opinion that article 5694, Vernon's Sayles' Ann. Civ. Stat. 1914, created a conclusive presumption of payment of purchase money of land by a lapse of four years from the due date of the vendor's lien note, and in another place holds that the county could remove the presumption of payment of the note and extinguishment of the vendor's lien by proof. The Supreme Court did not approve the rulings of the Commission of Appeals, but merely approved the result, and ordered:

"Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals."

[9] Article 3, § 55, of the Constitution, seems to have been lost sight of in the endeavor of the Commission of Appeals to apply the law of conclusive presumptions to debts due the state or county, and to vendor's liens retained by either. The Constitution denies the Legislature the power "to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any incorporation or individual, to this state, or to any county or other municipal corporation therein." That provision of the Constitution is broad enough to cover a statute that would by its operation, whether it be made as to create a period of limitation or rule of evidence, and could not be permitted "to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part," a debt or obligation to a state or county. The law in question was passed in 1913, when the provision of the Constitution in question was in effect.

[10] If it be conceded that the statute creating a "conclusive presumption" that a debt due on purchase money for land, and the vendor's lien reserved to secure payment, has been paid and extinguished after the lapse of four years from due date, is constitutional as applied to the sovereign or its subdivisions, it would be in the face of common sense to hold that it could be applied where there is not only admission, in effect, that the debt has not been paid, but where it is shown by the judgment of the commissioners' court that it has not been paid. A presumption of no kind can arise except in the absence of facts, and, while the Legislature might declare a presumption of law based on the failure of the holder of a note to enforce payment for four years after the debt became due, still, when the pleadings and evidence show that the debt is not paid, it creates an absurdity to indulge in such presumption.

[11] The act of April 3, 1913 (Acts 1913, c. 123), was not passed as a rule of evidence, but as a statute of limitations. It was enacted as an amendment to articles 5693, 5694, and 5695, of chapter 2, title 87, Revised Civil Statutes of Texas 1911, and was a statute of limitations pure and simple. In its provisions it was in no wise different from any other statute of limitation, and, if the state or any of its subdivisions can be barred by its provisions, then they can be barred by any other statute of limitations by calling it a rule of evidence. It was looked on as a part of the law of limitation, and was placed in the Revised Statutes of 1914, under the head of limitations. All that part of the statute of 1913 stating the effect of the bar of the statute creating a "conclusive presumption" is mere surplusage, and adds nothing to the statute. The foundation of every statute of limitations as to debts is the

presumption of payment, and there is no peculiar significance in the declaration of the Legislature in the statute of 1913 as to "conclusive presumptions" as to payment. It is not even good ballast. There is no intimation in the caption or in the body of the statute that would justify that the statute of 1913 was intended to apply to rules of evidence, but it was evidently intended as an amendment, as it stated, to a statute on limitations. It does not affect the state or any of its subdivisions, and we do not propose to read into it anything that would destroy any rights of the sovereign state or any of its subdivisions.

[12] Cameron county is before this court claiming through its petition that no payments were made on the note executed by George West in 1884, when it had accepted payments from him of $10,000 on the principal and $8,460 as interest. It would be unconscionable to entertain such a proposition. It is not true that the sum of $26,760 payment was not shown by the answer. It matters not for what purpose the last payments were made; it matters not that the county obtained $18,460 on an invalid contract, the county received the money and used it, and all the rules of equity, good conscience, and upright dealing would require that the appellants have credit for it.

The judgment of the district court is reversed, and judgment is here rendered that Cameron county recover of and from the estate of George W. West, deceased, the sum of $10,000, principal, with interest thereon at the rate of 8 per centum per annum from February 1, 1895, and that appellee pay all costs of the appeals in this case.