HENRY WILKINSON ET AL. V. FIRST NATIONAL BANK
OF CROSBYTON.

No. 5130. Decided February 6, 1929.
(13 S. W., 2d Series, 346.)

*W. H. Russell,* for appellants.

Where a note, secured by a trust deed, is renewed from time to time, by the execution of a new, renewal note, such renewals continue the lien securing said note as between the parties; and between the holder of such note, and lien, *"and others,* who have not become purchasers of the land, or holders of liens thereon acquired more than four years after the maturity of such notes." Jolly v. Fidelity Union Trust Co., 298 S. W., 530.

The plaintiff, Bank, can claim no rights under the assignment from Murray because it merely took a formal assignment of something it already owned; it paid no consideration for the assignment; it was taken for a pre-existing debt. Moody v. Martin, 117 S. W., 1015, and authorities cited at page 1017; 41 C. J., 545.

*W. P. Walker, G. W. Rice, L. L. Gambil,* and *Goree, Odell & Allen,* for appellee.

The lien of the Crosbyton Bank, which was valid as between the parties thereto and was properly evidenced by extension of record as required by the statutes, was not defeated and extinguished by the sale under the deed of trust held by the Hereford Bank, which deed of trust appeared to be barred on the records and had been extended and renewed only as between the parties to that particular indebtedness, and which renewal and extension had not been acknowledged and filed of record, as required by the statutes but was evidenced only by an endorsement on the note or indebtedness secured by said deed of trust. Rev. Stats., Arts. 5521, 5522, 5523; Pecos Mercantile Co. v. McKnight, 256 S. W., 933; Cathey v. Weaver, 242 S. W., 447; Russell-Coleman Oil Mill v. Johnson, 287 S. W., 134; Amonette v. Taylor, 244 S. W., 238; First National Bank v. Lane, 256 S. W., 763; Hoya v. Self, 245 S. W., 425; First National Bank v. Watson, 271 S. W., 438, 285 S. W., 1050; Mortgage Co. v. Bellamy, 265 S. W., 1070, 278 S. W., 180; Clark v. Mussman, 203 S. W., 380; Allison-Ritchey v. Weldon, 220 S. W., 390; Templeman & Son v. Kempner, 223 S. W., 293.

Mr. Presiding Judge HARVEY delivered the opinion of the Commission of Appeals, Section A.

On December 13, 1921, John D. McDermett executed his promissory note to T. T. McDermett, due one year after date. To secure payment of the note he executed a deed of trust to Henry Wilkinson, as Trustee, which conferred on the trustee the usual power of sale,

and recited the note and its maturity date. This deed of trust covered certain lands in Deaf Smith County, and was filed for record January 23, 1922. About this time, the note was endorsed by T. T. McDermett to the First State Bank & Trust Company of Hereford, which will be designated herein as the Hereford Bank. On December 13, 1922, John D. McDermett executed a renewal note covering the above debt, which note was payable one year after date. On February 4, 1926, he executed another renewal note, payable November 1, 1926. This last mentioned renewal note was not paid by the maker and, in satisfaction thereof, Henry Wilkinson, as Trustee, sold the lands covered by the deed of trust above mentioned, under the power of sale conferred by that instrument and in conformity to its provisions. The sale occurred on October 4, 1927. At such sale, J. A. Pitman became the purchaser of the lands, and deed therefor was duly executed to him by the trustee, Wilkinson. This deed was filed for record October 14, 1927.

The First National Bank of Crosbyton, which will be designated herein as the Crosbyton Bank, is asserting a lien on the lands which were sold to Pitman. The history of its alleged lien is as follows:

On February 15, 1922, some three weeks after the above mentioned deed of trust executed by John D. McDermett was filed for record, the latter executed his promissory note, due December 1, 1922, to C. W. Murray who, about the time the note was executed, endorsed it to the Crosbyton Bank as collateral security for an indebtedness which Murray then owed said bank. The note was secured by a deed of trust, of even date, executed by John D. McDermett, covering the same lands as the one first mentioned. This second deed of trust was filed for record February 18, 1922, and recites the note and its maturity date. A renewal note, payable February 15, 1927, was executed by John D. McDermett to C. W. Murray on November 27, 1926; which renewal note was immediately endorsed and delivered by C. W. Murray to the Crosbyton Bank, as collateral security for his said indebtedness to that bank, in lieu of the original note of February 15, 1922. At the time this renewal note was executed, John D. McDermett executed and acknowledged an instrument which recited the execution and maturity date of the renewal note, and extended the deed of trust lien of February 15, 1922. This instrument was filed for record December 1, 1926. On January 18, 1927, Murray, in payment of his said indebtedness to the Crosbyton Bank, executed an instrument in writing by which he formally assigned to the Bank the renewal note of John D.

McDermett, which note had, up to that time, been held by the Bank as collateral security for Murray's said indebtedness. This instrument also formally assigns to the Bank the deed of trust lien securing the renewal note. On the same day, John D. McDermett executed another renewal note to Murray, in lieu of the one covered by the formal assignment, which was at once endorsed in blank by Murray and delivered to the Bank. This last renewal note was payable July 1, 1927.

Suit was brought by the Crosbyton Bank, on October 28, 1927, against Henry Wilkinson, J. A. Pitman, the Hereford Bank, John D. McDermett, and others not necessary to be mentioned, seeking to recover of McDermett the amount of the last mentioned renewal note, and to foreclose the lien created by the deed of trust bearing date February 15, 1922. The trial court rendered judgment in favor of the Crosbyton Bank, foreclosing said lien on the lands covered by said deed of trust, as against all the defendants in the suit. The case having been appealed to the Court of Civil Appeals for the Seventh Supreme Judicial District, that court submits the following certified questions, to-wit:

"1. Was the lien of the Crosbyton Bank, the junior lien holder whose debt and lien have been renewed and extended in accordance with Revised Statutes, Articles 5521–5523, defeated and extinguished by the trustee's sale under the Hereford Bank's prior deed of trust executed to secure its debt, and which had been renewed before the expiration of four years from its maturity, but which had not been recorded as provided by said Statutes?

"2. Is the Hereford Bank's debt, as against the Crosbyton Bank, presumed to have been paid (Under R. S. Article 5521), because the former's notes and lien were not extended in writing and placed of record, as required by R. S. Articles 5522 and 5523?

"3. Under the foregoing statement, is the Crosbyton Bank, entitled to foreclose its lien against Pitman, the purchaser?"

In the enactment of Articles 5521, 5522 and 5523 of the Revised Civil Statutes of 1925, the legislature has prescribed a general rule which is to the effect that a mortgage lien debt against land shall be conclusively presumed to be paid and the lien extinguished after four years have elapsed from the maturity date shown in the mortgage, unless the time of payment of such debt has been extended by instruments duly executed and recorded in accordance with the requirements of these statutes. This general rule is qualified by

certain exceptions; one of these exceptions being expressed in Article 5522 in the following words:

"Provided the owner of the land and the holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lien holders or purchasers subsequent to the date such liens became barred of record under laws existing prior to the taking effect of, or under this Act";

In this clause of the statute is to be found authority for the making by the mortgagor of valid agreements, independently of these statutes and in disregard of their requirements, for the renewal or extension of the mortgage debt and lien, and of the power of sale conferred by the mortgage. The sole prescribed limitation of the validity and legal effect of his agreements in this respect has exclusive reference to those who purchase the mortgaged premises, or who acquire liens thereon, more than four years after the maturity date shown in the mortgage and while there appears of record no extension agreement, duly executed in conformity to the require ments of these statutes, showing the mortgage lien still to be subsisting. This limitation is expressed in the statute; no other one is implied. Subject, therefore, to this single limitation, the validity and legal effect of these agreements of the mortgagor are precisely the same as if none of the provisions of the statutes now under consideration had ever been enacted. That is to say, if the debt becomes barred by the statute of limitation, the lien is lost; but the mortgagor may restore both, so long as the rights of third persons are not affected. On the other hand, if the debt has never become barred, the mortgagor may, by his written acknowledgment of the justness of the debt, extend both debt and lien; and such extension will be effective as to the mortgagor and those whose rights in the land are subordinate to the mortgage. Flewellen v. Cochran, 19 Texas Civ. App., 499, 48 S. W., 39; Holford v. Patterson, 113 Texas, 410, 257 S. W., 213.

At the time of the trustee's sale to Pitman, the first lien debt had never in fact been four years past due. The renewal notes executed by the mortgagor, John D. McDermett, had effect to keep the debt alive; and also to keep in force the provisions of the deed of trust covering the debt. The rights held in the land by the Crosbyton Bank were merely those of a junior lien holder; they therefore could not prevent the renewal notes from having the effects stated. As originally created, the lien asserted herein by said Bank was a

second lien. When the note secured thereby was transferred by Murray to the Bank, as collateral security, the Bank became the legal holder of such note and the debt of which it was evidence (Kaufman v. Roby, 60 Texas, 308, 48 Am. Rep., 264; Jackson v. Fawlkes, 20 S. W., 136), and holder of the lien securing such debt. Solinsky v. Fourth Nat'l Bank, 82 Texas, 244, 17 S. W., 1050; Flanagan v. Cushman, 48 Texas, 241. At that time the first deed of trust was duly of record, and its recitals showed the first lien debt to be unbarred. So far as shown by the facts before us, nothing occurred thereafter which has effect to disturb the order of priority then prevailing between these two liens. The formal written assignment executed by Murray to the Crosbyton Bank on January 18, 1927, some weeks after the first lien appeared to be barred of record, gave that bank no rights superior to the first lien. The payment of Murray's indebtedness to the Bank was the sole consideration for the execution of this instrument. The Bank already held, as collateral security for said indebtedness, the second lien which formed the subject-matter of this formal transfer. The instrument, therefore, did not confer upon the Crosbyton Bank any right, respecting enforcement of such lien, which it had not long before acquired. That bank's status of junior lien holder remained unchanged by the transaction.

We recommend that the first certified question be answered "Yes," and each of the other two, "No."

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.