**CAFFARELLI BROS. v. PEARCE et al.**

No. 1091—5324.

Commission of Appeals of Texas, Section A.

Feb. 4, 1931.

William Aubrey and C. E. Caruthers, both of San Antonio, for plaintiffs in error.

Thomson, Dilworth & Marshall, Terrell, Davis, Huff & McMillan, all of San Antonio, for defendants in error.

Dodson & Ezell, of San Antonio, for Schumann.

CRITZ, J.

On October 21, 1913, Friesenhahn and Albrect purchased jointly from one Kraft a certain tract of land executing as a part consideration therefor a vendor's lien note for $4,000 maturing January 1, 1919.

On August 2, 1917, the grantees in the above deed executed a note for $2,000, secured by a deed of trust on the land involved. This note was subsequently extended to March 27, 1923.

On March 27, 1922, Friesenhahn conveyed his undivided interest in the land to Albrect, who, as a part of the consideration therefor, assumed and agreed to pay the $4,000 first lien note and the $2,000 second lien note. In later conveyances of the land, vendor's lien notes secured by a third lien in the sum of $1,000 were executed; plaintiffs in error becoming the owners thereof. Subsequent to July 3, 1923, Caffarelli Bros. purchased the note held by Geisler, which was secured by a second lien, originally for the sum of $2,000, but afterwards enlarged to $2,397.80.

Defendants in error, for a valuable consideration in due course of trade, and without notice, acquired the $4,000 first lien note, and, default having been made in the payment thereof, suit was brought against the makers of the note, Caffarelli Bros., as holders of the junior lien, being made parties to the proceeding.

Upon a trial, defendant in error Pearce was awarded a judgment on the note sued on, together with a foreclosure of the vendor's lien which was decreed to be a first and superior lien, and Caffarelli Bros. obtained judgment of foreclosure subject thereto for the amount of the indebtedness held by them.

The $4,000 note, which was decreed to be a first lien in the judgment rendered by the court, was by its terms barred by limitation on the 1st day of January, 1923. No renewal was executed by the makers of this note until more than three months after the note had become barred by limitation, at which time they entered into an extension agreement which was duly acknowledged and recorded.

Under this state of facts, plaintiff in error insists that, when the $4,000 vendor's lien note became barred by limitation, the junior lien held by them became a first lien on the property, and that the makers and holder of the $4,000 note could not enter into a contract of renewal and extension after the bar of limitation had become complete, which would operate to make the lien securing said note superior to the lien securing the notes held by them.

The rule seems to be established in this state that, under Vernon's Sayles' Ann. Civil Statutes, 1914, art. 5694, the statute fixing the right of these parties, barring a recovery on a vendor's lien in four years from the maturity of the debt, and article 5695 of the same statute, providing that the debt may be extended by a contract signed by the "party or parties obligated to pay such indebtedness," an extension contract between the vendor and the vendee extends the time of recovery under the lien, though a purchaser from the vendee is not a party thereto. Howell v. Townsend (Tex. Civ. App.) 217 S. W. 975 (writ Ref.), and authorities there cited. Also it has been held that the vendee can renew a vendor's lien note, and such renewal will be valid and binding on a subsequent purchaser from the vendee. Howell v. Townsend, supra, and authorities there cited.

If, under the 1913 act (Acts 1913, c. 123), an extension contract between the vendor as holder of the lien and the vendee as the maker thereof is binding on a purchaser from the vendee, we can think of no reason why the same rule should not apply to a junior lienholder. In both instances an interest in land is owned; in the first instance the interest is in the form of title to the land in the ordinary meaning or acceptation of that term; in the second instance the interest is in the form of a lien, but we cannot see that the statute under consideration contemplated any distinction between bare ownership in the land and ownership of a lien therein.

▇ As shown by the above statement, something over three months after the first lien note became barred it was renewed in writing by the makers. This contract was duly acknowledged and recorded, and, under the authority of Howell v. Townsend, supra, and the authorities there cited, said renewal was binding upon the junior lienholders. We wish here to remark that the junior lienholders obtained their liens while the first lien was in full force, and same became barred while the junior liens were in existence and held by the parties hereto.

The above holding is not in any way in conflict with the opinion of the Court of Civil Appeals in Pecos Mercantile Co. v. McKnight, 256 S. W. 933 (writ ref.), where it was held that, in a suit by a junior lienholder to recover on its debt and foreclose its lien, Vernon's Sayles' Ann. R. Civ. St. 1914, articles 5694 and 5695 are available and inure to a junior lienholder. An examination of that case will disclose that no issue of renewal by "the party or parties obligated to pay" was involved.

What we have said with reference to the legal effect of the contract of renewal and extension makes it unnecessary for us to pass on the effect of the assumption of the $4,000 note as bearing on the question of limitation, and we pretermit any decision of that question.

As shown by the record and by the opinion of the Court of Civil Appeals, the land involved in this litigation was on July 3, 1923, incumbered with three distinct liens: First, the $4,000 vendor's lien note above mentioned then held by Walter Schumann; second, a deed of trust securing a second lien originally for $2,000, but subsequently enlarged to $2,397.80, held by Geisler; and third, a vendor's third lien note for $1,000 held by Caffarelli Bros. In this situation Geisler sought to foreclose the second lien for $2,397.80, and, under the terms of his deed of trust, the land in question was advertised to be sold on said July 3, 1923. On that day Walter Schumann, the then holder of the $4,000 lien, signed and delivered to Caffarelli Bros., the holders of the third lien, the following letter:

"July 3rd, 1923.

"Caffarelli Bros., San Antonio, Texas.

"Dear Sirs: As an inducement to you to purchase the note of Mrs. Anna Albrecht to August Geisler and Marie Geisler for $2,397.80 secured by lien on certain property situated in the town of Selma, Texas, which purchase is to be made in order to prevent the sale of such property under deed of trust securing said note, said sale having been advertised to take place on July 3rd, 1923, I hereby acknowledge and state that as a matter of law the lien or liens held by me against said property to secure the payment to me for a note for $4,000.00 which has been extended, are inferior and subordinate to said Geisler deed of trust lien.

"Yours very truly,    Walter Schumann."

Upon receipt of the above letter, which on its face affirmatively shows that it was written for the purpose of inducing Caffarelli Bros. to purchase the $2,397.80 note, and thereby avert the sale of the property thereunder, and relying thereon, Caffarelli Bros. purchased such note. Later Walter Schumann, in utter disregard of the rights of Caffarelli Bros., sold the $4,000 note and lien to one Sherman, who in turn sold it to Pearce, who brought this action.

Caffarelli Bros. reconvened in this suit and sought to establish the superiority of their liens over the $4,000 note and lien securing same, and, in the alternative, sought a personal judgment against Schumann for dam-

ages. We have already disposed of the issue of superiority of liens, and must therefore decide the matters involved in the action for damages by Caffarelli Bros. against Schumann.

On the question of the right of Caffarelli Bros. to recover against Schumann, the Court of Civil Appeals holds that Schumann is not liable to Caffarelli Bros.; in effect holding the letter to be the mere expression of a legal opinion. We cannot agree with this holding. The letter expressly states that it is written "as an inducement to you to purchase the note," etc. It further expressly states, "which purchase is to be made in order to prevent the sale of such property under deed of trust securing said note," etc. It then states, "I hereby *acknowledge* (italics ours) and state that as a matter of law the lien or liens held by me against said property * * * are inferior and subordinate to said Geisler deed ot trust and lien."

██ We think that, when the letter is construed as a whole, it amounts to more than an expression of a legal opinion, but, on the contrary, is a direct and binding legal contract and *acknowledgment* that the lien held by Schumann would be subordinated to the Geisler lien in case Caffarelli Bros. should purchase the same, and thereby prevent the sale of the property. Caffarelli Bros. did purchase said note and lien, relying, in doing so, on the statements and acknowledgment contained in the letter. Under such a record there can be no doubt that, had Schumann kept his note and lien, and himself brought this action, he would have to subordinate the same to the Geisler note and lien. Certainly he should not be allowed to escape the consequences of the contract which existed between him and Caffarelli Bros., to their damage and to his own profit, by transferring his note and lien, and, when he does so, he ought to respond to Caffarelli Bros. for such damages as they have suffered in the premises.

We therefore recommend that the judgments of the Court of Civil Appeals and district court be in all things affirmed, except that part of such judgments which deny Caffarelli Bros. a recovery against Walter Schumann, and we recommend that that part of said judgments be reversed and judgment here rendered in favor of Caffarelli Bros. and against Walter Schumann for such amount as the net proceeds of such property when sold shall fail to pay on said $2,397.80 note, including interest and attorney's fees.

CURETON, C. J.

Judgments of the Court of Civil Appeals and district court are both affirmed in part, and in part reversed and rendered, as recommended by the Commission of Appeals.