## C. E. YATES ET AL V. J. R. DARBY.

No. 7274. Decided July 26, 1939.
(131 S. W., 2d Series, 95.)

594

*Gunter & Watson,* of Port Arthur, for plaintiffs in error.

When the school board took possession of the land in question, by virtue of their reservation of title in their original deed on the sale thereof and by voluntary abandonment of said property to them and their taking possession of same they thereby concluded any right that the judgment lien holder of their vendee might have in said land. Barker v. Temple Lumber Co., 120 Texas 244, 37 S. W. (2d) 721; Benn v. Security & Realty Dev. Co., 54 S. W. (2d) 146; Church v. Cocke, 120 Texas 262, 37 S. W. (2d) 723.

*Crook & Cunningham,* of Beaumont, for defendants in error.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Suit was filed in the early part of 1935 by defendant in error Darby against plaintiffs in error Yates and others, who are trustees of the Port Arthur Independent School District, for the foreclosure of a judgment lien on three lots in the City of Port Arthur, in Jefferson County. The trial court's judgment in favor of defendant in error was affirmed by the Court of Civil Appeals. 103 S. W. (2d) 1007.

The case was tried upon an agreed statement of facts, the substance of which is as follows: The three lots were conveyed by the trustees of the Port Arthur Independent School District to C. D. Jones on December 25, 1919, the deed retaining a vendor's lien to secure a purchase money note for $2300.00 payable in 77 monthly installments, the first due January 5, 1920, and one installment being due on the 5th day of each succeeding month thereafter. On March 27, 1924, Jones conveyed the lots to Peter Smith, the deed reciting that the grantee assumed the unpaid balance of the above described note, amounting to $1640.00. Defendant in error Darby, on

August 17, 1932, recovered judgment against Peter Smith for $2789.10, later reduced to $1789.10 by a credit. An abstract of the judgment was duly recorded and indexed in the abstract of judgment records of Jefferson County on August 17, 1932. Plaintiffs in error, the school trustees, on January 31, 1933, advanced for the account of Peter Smith the sum of $219.01 for the payment of taxes assessed against the lots, Smith agreeing to repay the sum so advanced and that plaintiffs in error would be subrogated to the rights of the tax collecting authorities.

On February 1, 1933, Peter Smith conveyed the lots to plaintiffs in error, the actual consideration for the conveyance being the unpaid balance of $950.00 principal on the original purchase money note executed by Jones. On February 2, 1933, a conditional sales contract was executed whereby plaintiffs in error agreed to reconvey the lots to Peter Smith upon the full payment of a new note executed on the same day by him, payable in 260 monthly installments, this note in amount equaling the unpaid balance of the original note given by Jones, together with interest thereon and the sum advanced by plaintiffs in error in payment of taxes. Peter Smith defaulted in payment of the new note, breached the provisions of the conditional sales contract, and voluntarily abandoned the property to plaintiffs in error, who took possession of it under the terms of the sales contract. The record does not show when possession was taken by plaintiffs in error.

The position taken by defendant in error, and which was sustained by the Court of Civil Appeals, is that, inasmuch as the last of the installments to be paid on the vendor's lien note held by plaintiffs in error was more than four years past due at the time when defendant in error's judgment lien attached to the property, each installment thereof was then and is now, under the provisions of Articles 5520 to 5522, Revised Civil Statutes of 1925, conclusively presumed to have been paid, and that plaintiffs in error could not, after defendant in error's lien had been acquired under such circumstances, obtain, by subsequent rescission, or by dealings with Smith touching the property, a right superior to the judgment lien.

On the other hand, the assignment of error, upon which the writ was granted to plaintiffs in error, presents the contention that the statute above referred to does not affect the superior title retained by the vendor and that, when plaintiffs in error, as unsatisfied vendors and by virtue of their superior title, obtained possession of the property under the

deed from Smith and by Smith's voluntary abandonment thereof to them, "they thereby concluded any right that the judgment lien holder of their vendee might have in said land."

A careful examination of the applicable articles of the statute and the decisions construing them leads us to the conclusion that the Court of Civil Appeals correctly sustained the position taken by defendant in error.

■ The applicable articles of the statute are Articles 5520 to 5523 of the Revised Civil Statutes of 1925, as amended in 1931 by Chapter 136 of the Acts of the Regular Session of the Forty-second Legislature, which, in so far as they relate to the superior title retained by a vendor to secure the payment of purchase money, apply both to deeds executed before and to deeds executed after the Revised Civil Statutes of 1925 and the amendatory act of 1931 went into effect. The deed in which plaintiffs in error retained the vendor's lien was executed in 1919, and the last installment of the purchase money note payable to them became due May 5, 1926, and according to the terms of the statute was barred May 6, 1930. Defendant in error's judgment lien was acquired August 17, 1932. The conveyance from Smith to plaintiffs in error, by which they undertook to rescind the sale made in 1919 and under which conveyance they repossessed the property, was made on February 1, 1933. Such being the facts, neither the Revised Civil Statutes of 1925 nor the amendment of 1931 deprived plaintiffs in error of a reasonable time for the enforcement of their remedies as vendors and owners of the note secured by vendor's lien. Cathey v. Weaver, 111 Texas 515, 522, 242 S. W. 447.

The present statute, Articles 5520 to 5523, as amended in 1931, had its beginning in Chapter 138, Acts of the Regular Session of the Twenty-ninth Legislature (1905) and is the product of a number of subsequent reenactments and amendments of the original act. Acts Regular Session 33rd Legislature (1913) Ch. 123, p. 250; Acts First Called Session, 33rd Legislature (1913) Ch. 27, p. 39; Acts Regular Session 39th Legislature (1925), Ch. 64, p. 215; Acts Regular Session 42nd Legislature (1931) Ch. 136, p. 230.

■ The purpose of the original act of 1905, as stated in its caption and as emphasized by Chief Justice Cureton in the opinion in Cathey v. Weaver, supra, was to fix a time within which the power of sale conferred in mortgages and deeds of trust might be exercised, and after which vendor's liens should be presumed to be· released and satisfied. The several amenda-

tory acts, as is apparent from their language, had the same general purpose.

In the instant case we are concerned with the provisions of Articles 5520 to 5522 of the Revised Civil Statutes of 1925 and the amendment of 1931 which relate to the vendor's superior title and to the purchase money notes which the superior title is retained to secure. Article 5520 provides in substance that actions to recover real estate by virtue of a superior title retained by the vendor in a deed of conveyance or purchase money note, and actions for the foreclosure of the vendor's lien on real estate, shall be commenced within four years after the cause of action has accrued and not afterward. This article of the statutes bars not only the vendor's right to foreclose his lien but also his right to recover the real estate by virtue of the superior title. The question under consideration, however, is not determined by the provisions of Article 5520 prior to its amendment in 1931, since plaintiffs in error have not sued to recover the property but are asserting the superior title defensively against defendant in error's suit to foreclose his lien.

Article 5521, Revised Civil Statutes of 1925, is as follows:

"Purchase money or mortgage lien notes relating to real estate shall conclusively be presumed to have been paid after four years from the date of maturity of such notes unless extended as provided by law." It is our opinion, for the reasons hereinafter stated, that this provision of Article 5521 (which is incorporated in Article 5520 as amended in 1931), that purchase money notes shall conclusively be presumed to have been paid four years from the date of their maturity, controls the decision of the instant case.

Article 5522, which was neither amended nor appealed by the act of 1931, relates in the main to the extension of liens by the execution of contracts extending the dates of the maturity of the debts. It contains, however, this significant language applicable both to the deed of conveyance or deed of trust and to the recorded renewal and extension: "The date of maturity set forth in the deed of conveyance or deed of trust or mortgage, or the recorded renewal and extension of the same, shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned."

■ We do not set out or discuss in detail the provisions of Article 5522, because there has been no extension of the lien retained in the deed of 1919 or of the date of maturity of

the debt secured thereby. It is true that a new installment note was executed by Peter Smith as a part of the unrecorded conditional sales contract executed on February 2, 1933, by which plaintiffs in error agreed to reconvey the property to Smith, but that contract was not in renewal or extension of a lien held by plaintiffs in error upon real estate owned by Smith. It was a contract by which plaintiffs in error conditionally agreed to reconvey the land to Smith after they had acquired Smith's title by his voluntary conveyance to them. The contract neither reserved nor undertook to renew a lien to secure the new note. It provided that when the purchase price evidenced by the note should be paid in full, plaintiffs in error would execute a deed conveying the property to Smith free of all liens. Such contract for reconveyance is not an extension or renewal as is contemplated by Article 5522. Moreover, it could not affect the rights of defendant in error, who acquired his lien long before the conditional sales contract was executed and at a time when the last installment on the original note was more than four years past due.

The act of 1931 (Chapter 136, Acts Regular Session 42nd Legislature) repeals Articles 5521 and 5523 and rewrites Article 5520, apparently intending to embody in the one article the substance of the three articles as they appeared in the Revised Civil Statutes of 1925. The primary purpose of the act of 1931, as is shown by the emergency clause, was to clarify the provisions of the statute with respect to the time when limitation begins to run on a series of notes and notes payable in installments.

■ Article 5520 as rewritten in 1931, after making the provision last referred to, contains the following: "Upon the expiration of four years from and after the date of maturity of the last said note or installment, payment shall be conclusively presumed to have been made of each said note and installment, and the lien for the security of same shall cease to exist, unless the same is extended by an agreement in writing by the party or parties primarily liable for the payment of the indebtedness, as provided by law." This sentence contains the substance of Article 5521 above quoted, and in our opinion is intended as a reenactment of that article and to be applicable to all notes secured by vendor's liens or by deeds of trust or mortgages.

The note held by plaintiff in error comes literally within the terms of amended Article 5520. It is payable in installments and secured by vendor's lien retained in the deed from

plaintiffs in error to Jones. The last installment became due May 5, 1926. By the terms of amended Article 5520 there was created as to this note, at the expiration of four years from May 5, 1926, a conclusive presumption that payment had been made of each installment, that is, that the debt evidenced by the note had been fully paid.

■ The effect of such conclusive presumption of payment, like the effect of actual payment, is to terminate the superior title retained by the vendor, and consequently to terminate all remedies for the enforcement of such superior title. This court has uniformly held that the title of the vendor, who reserves in his deed a lien for the purchase money, is superior in the sense that the vendee cannot assert his title against the vendor unless he has paid the purchase money, that the vendor's title is limited to the character of security for the purchase money debt, and that when the debt has been paid the title of the vendor ceases and that of the vendee "becomes absolute as to the vendor without any action on his part." Carey v. Starr, 93 Texas 508, 515, 56 S. W. 324; Stitzle v. Evans, 74 Texas 596, 12 S. W. 326; Humphreys-Mexia Company v. Gammon, 113 Texas 274, 254 S. W. 296, 29 A. L. R. 607; Gray v. Kaliski (Com. App.) 45 S. W. (2d) 157. The vendor's superior title ipso facto terminates upon the payment of the purchase money notes. Termination of the superior title is as effectively and as completely accomplished when by the force of the statute a conclusive presumption of payment of the note arises at the end of four years after its maturity.

■■ The legislative act may create such conclusive presumption, because in so doing it merely fixes a period of time after the expiration of which the vendor may not exercise any remedy for the enforcement of the superior title. The grantor who has retained a vendor's lien has two remedies when the purchase money is past due and unpaid. He may sue to foreclose his lien or he may rescind the sale and assert his right to the property. Judge McClendon, writing the opinion in Maverick v. Perez (Com. App.) 228 S. W. 148, said: "The right to rescind and recover the property upon the strength of the vendor's so-called superior title is but an alternative remedy which the vendor has under the contract of sale." In Tom v. Wollhoefer, 61 Texas 277, 281, Chief Justice Willie, when discussing the nature of and limitations upon the vendor's right to rescind after default in the payment of the purchase money, refers to it as "the vendor's remedy of rescission." The remedy of rescission may be exercised either by suit to

recover the land or without suit, under proper circumstances, by conveying the land to a third party, by parol agreement of the parties, or by "taking back the land." Tom v. Wollhoefer, supra; Johnson v. Smith, 115 Texas 193, 199, 280 S. W. 158; Rooney v. Porch (Com. App.) 239 S. W. 910.

■ The action of plaintiffs in error, in accepting a voluntary reconveyance of the property from Smith on February 1, 1933, and taking possession under the conveyance, was an effort· on their part to exercise the remedy of rescission without suit. The last installment of the note then being more than four years past due, they could not have rescinded by suit for recovery of the land in virtue of the superior title, for Article 5520, both as appearing in the revised statute and as amended, bars such suit by express language. Rescission without suit should not be permitted when the circumstances are ·such that it could not be affected by resort to the courts. Tom v. Wollhoefer, 61 Texas 277, 280. This principle, however, need not be invoked in determining the rights of the parties in this case for, according to the unambiguous language of the statute, a conclusive presumption is raised that the note was paid before defendant in error acquired his lien and long before the attempted rescission. As has been said, the effect of such conclusive presumption of payment was to terminate the superior title, and with the passing of the superior title passed also the remedy of rescission, by suit or without suit.

■ We hold, therefore, that defendant in error's judgment lien is superior to the right and title in and to the property acquired and asserted by plaintiffs in error under the deed from Smith and as unsatisfied vendors in possession.

Bunn v. City of Laredo (Com. App.) 245 S. W. 426, and Benn v. Security Realty & Development Company, 54 S. W. (2d) 146 (application for writ of error refused) are cited by plaintiffs in error as supporting their contention that the statute does not affect the superior title and does not deprive the vendor as owner of such superior title of the right to rescind without suit. The facts of both of those cases brought them within the provisions of the act of 1913, that is, Article 5694 and 5695 of the Revised Statutes of 1911 as amended by Chapter 123, Acts of the Regular Session 33rd Legislature. It was held in those cases that the only effect of the act of 1913, as regards the superior title, was to bar the right of action thereon when asserted in the courts and that it did not

affect the vendor's remedy of rescission without suit. As is shown by the careful analysis of amended Article 5694 in the opinion in Bunn v. City of Laredo, this construction was given to that statute because the provision in that article with respect to the conclusive presumption of payment was that "the purchase money thereof shall be conclusively presumed to have been paid *in any suit to recover the land or to enforce the lien thereon.*" (Our italics). It was held that the effect of the quoted phrase was "to expressly limit the presumption of payment to suits to recover upon the superior title or to enforce the lien."

There is no such limitation in the provisions of Article 5521 of the Revised Civil Statutes of 1925 or of amended Article 5520. Both articles, in sentences that make no reference to suits, expressly declare that purchase money notes shall be conclusively presumed to have been paid after four years from the date of maturity, unless they are extended as provided by law. The only qualification or limitation expressed is that with respect to extension. We cannot by judicial construction read into Article 5521, or into amended Article 5520, the limitation that payment is conclusively presumed only in a suit brought by the vendor to recover the land or to enforce a lien. Such construction would do violence to the plain language of the statute, would give the vendor a remedy of rescission in direct contradiction of the conclusive presumption of payment, which necessarily denies that remedy, and would defeat in large measure the purpose for which the statute was enacted.

The decision made herein, that the defendant in error's lien is superior to the claim of plaintiffs in error to the property by virtue of the superior title and their possession of the same under the deed from Peter Smith, does not conflict with Jasper State Bank v. Braswell, 130 Texas 549, 111 S. W. (2d) 1079, 115 A. L. R. 329, nor with what is said in the opinion in that case with reference to Articles 5520 to 5523. There the mortgagee acquired possession of the property by purchase at a foreclosure sale which was void as to the interest of Mrs. Braswell, one of the mortgagors. It was held that, although the notes secured by the mortgage were more than four years past due at the time the suit was filed, Mrs. Braswell could not recover her interest in the property by suit against the mortgagee lawfully in possession, without paying her pro rata part of the debt secured by the mortgage. The mortgagee went into possession at a time when none of the

notes was more than four years past due, and the suit was between the mortgagee and one of the mortgagors. As in pointed out in the opinion in that case, with citation of authorities, the articles of the statute referred to "have been construed as not affecting in their literal strictness rights and agreements as between the mortgagor and mortgagee. It is held that they are intended primarily for the protection of third persons who may acquire liens on, or purchase, the mortgaged property more than four years after the maturity date shown in the mortgage and while there appears of record no extension agreement." The decision made in the instant case is in the protection of defendant in error, a third person, who acquired a lien on the property after the expiration of four years from the maturity of the debt secured by the vendor's lien and when there was no extension agreement.

■ It is to the facts of the instant case as last stated that what is said herein with reference to the meaning and effect of the conclusive presumption of payment is intended to apply. We do not mean to change or question the soundness of those decisions holding that agreements for the renewal or extension of notes and liens made without compliance with the provisions of the articles of the statute under consideration are nevertheless binding and enforceable as between the parties to such agreements. Among such decisions are Watson v. First National Bank of Coleman (Com. App.) 285 S. W. 1050; Bellamy v. Oklahoma Farm Mortgage Company (Com. App.) 278 S. W. 180; Jolly v. Fidelity Union Trust Company, 118 Texas 58, 298 S. W. 530, 10 S. W. (2d) 539; Amonette v. Taylor, 244 S. W. 238 (application for writ of error refused).

■ We recognize also the rule, established by several cases, that a junior lienholder who acquires his lien at a time when the first lien and the first lien notes are not barred is bound by an extension contract between the owner of the land and the holder of the first lien notes, provided that contract is sufficient as between the parties thereto. See Wilkinson v. First National Bank of Crosbyton, 118 Texas 202, 13 S. W. (2d) 346; Caffarelli Brothers v. Pearce, (Com. App.) 34 S. W. (2d) 813; Novosad v. Svreck, 129 Texas 34, 102 S. W. (2d) 393; Bellah v. Dennis, 129 Texas 367, 104 S. W. (2d) 490. The important differences between the facts of those cases and the facts of this case are that there was no contract for the extension of plaintiffs in error's note and that defendant in error's rights as lienholder accrued at a time when the note secured by the vendor's lien retained by plaintiffs in error

was more than four years past due. Such rights so acquired could not be affected by the subsequent transactions between plaintiffs in error and Peter Smith to which defendant in error was not a party. Holford v. Patterson, 113 Texas 410, 413-414, 257 S. W. 213.

█ An assignment in the application for writ of error complains of the failure of the Court of Civil Appeals to sustain plaintiffs in error's alternative contention that they have a superior lien upon the property by subrogation on account of having paid taxes for the account of Peter Smith. This court is not authorized to pass upon the question presented by this assignment for the reason that it was not raised either by assignment of error or by proposition in the Court of Civil Appeals. Subdivision (d) of Rule 1 for the Supreme Court; Desmuke v. Houston, 89 Texas 10, 17, 32 S. W. 1025; Gulf, Colorado & Santa Fe Railway Company v. Shelton, 96 Texas 301, 316, 72 S. W. 165; Bankers Life Company v. John E. Quarles Company, 131 Texas 65, 112 S. W. (2d) 1044; Boykin v. Southwest Texas Oil & Gas Company, (Com. App.) 256 S. W. 581.

The transcript contains a copy of three assignments of error filed by plaintiffs in error in the trial court, which assignments are copied in the back of plaintiffs in error's brief in the Court of Civil Appeals. That brief contains six propositions, each presented as germane to the three assignments of error. All of the said propositions and assignments relate to the right asserted by plaintiffs in error by virtue of the superior title reserved in the deed. None of them presents the contention that plaintiffs in error have a superior lien by reason of the payment of taxes. The inclusion of this question in the motion for rehearing filed in the Court of Civil Appeals is not sufficient to authorize this court to pass upon it. The question presented for review in an application for writ of error, unless it originated in the Court of Civil Appeals, must have been assigned and presented in the Court of Civil Appeals in the submission of the cause, as well as in a motion for rehearing filed in that court. Subdivision (d) of Rule 1 for the Supreme Court; Boykin v. Southwest Texas Oil & Gas Company, supra.

The judgments of the district court and the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court July 26, 1939.