**HART v. WINSETT et al.**

No. 14416.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 11, 1942.

Rehearing Denied Oct. 9, 1942.

Boyd Barjenbruch and T. H. Yarbrough, both of Bowie, for appellant.

Donald & Donald, of Bowie, for appellees.

SPEER, Justice.

M. B. Winsett instituted this suit in trespass to try title against C. R. Hart, to recover title to 59 acres of land in Montague County, describing the land by metes and bounds and further designated as the same land conveyed by Blanch King and husband to plaintiff, by deed dated December 14, 1939, recorded in certain volume and page number of the deed records of Montague County, Texas.

Defendant Hart answered with general denial, not guilty and with special plea to the effect that he sold the land to Mrs. King by deed dated June 8, 1927, and reserved a vendor's lien in said conveyance to secure the payment of a note for $225, due twelve months after date, providing for interest at 8% per annum, and ten per cent attorney's fees, under certain conditions. That the note had not been paid; that the makers of the note had been ab-

sent from the state for all times since the maturity of the note except for about twenty months at the time this suit was instituted and therefore the note and lien were not barred by limitations when the deed from King to plaintiff was executed, nor at the time of instituting this suit. Defendant interpleaded Blanch King and her husband, residents of New Mexico, served them with notice to nonresidents, sought judgment against them on the note and a foreclosure of the lien on the land and by cross-action against plaintiff likewise sought foreclosure of the lien against him.

Trial was had to the court without a jury, resulting in a judgment for plaintiff, divesting title out of defendant, and because the cross-defendants King were shown to be nonresidents, denied any relief to defendant Hart in his interpleader action against them. From this judgment Hart has appealed.

As we view this record, there is little, if any, conflict in the evidence which affects the result of this appeal. The controversy involves one of law.

Appellant (Hart) brings forward four points upon which he seeks reversal. They are, in substance: (1) error of the court in denying him a recovery on the note against the Kings; (2) error in failing to give effect to Article 5537 R.C.S.; (3) error of the court in entering judgment for plaintiff (appellee Winsett) on the theory that he was an innocent purchaser for value; and (4) error in failing to render judgment for defendant (appellant Hart) on his vendor's lien note and for a foreclosure of his lien securing the note.

It will be observed that these points are closely allied one with the other, so much so that it may be said complaint is made because the court denied Hart a judgment on his note and foreclosure of the lien against the Kings and Winsett, and further because judgment was entered for Winsett for a recovery of the land.

It is undeniably true that the Kings were nonresidents of the state and made no appearance at the trial. It is elemental that Hart could not recover a money judgment against them in this action of interpleader. Hart did not seek a rescission of his sale to them, nor ask to recover against them on his superior title reserved in his deed of conveyance, but only for judgment in personam and to foreclose his asserted lien. If it could be said that Hart's pleadings were such that he could have established his debt against the Kings and procure a foreclosure as against them, a thing we do not feel called upon to determine by this record, he was met with the apparent insurmountable barrier of the asserted title by Winsett. We express no opinion on Hart's right to a recovery against the Kings on the note in a forum having jurisdiction of the parties and subject matter.

As between plaintiff Winsett (appellee) and defendant Hart (appellant) under the undisputed facts, the judgment was proper. We have reached this conclusion for the following reasons:

It is undisputed that Hart sold the land in controversy to King by conveyance dated June 8, 1927, in which a vendor's lien note was recited, for $225, due one year after date. Subsequent purchasers, such as Winsett, were chargeable with constructive notice of the provisions of the recorded instrument. The note was due one year after date, or June 8, 1928. On the face of such a record the note was barred by the four years statute of limitation June 8, 1932. No extension agreement between the holder of the note and any one primarily liable for its payment was made and recorded, keeping the obligation alive beyond the limitation period. On December 14, 1939, the Kings sold and conveyed the land by warranty deed to Winsett, over six years after the four-year period had elapsed, and Winsett paid a valuable consideration for the conveyance; a part of the consideration seems to have been payment by Winsett of thirteen years' taxes against the property. Winsett learned of the Kings' ownership through a friend to whom the Kings had written, asking him to sell the property for them; the friend turned the letter over to Winsett and he corresponded with the Kings at intervals from perhaps May of 1939 until the time he purchased the land from them the following December. Winsett had no abstract of the title until after he purchased, when he procured one at his own expense. Shortly after he purchased, he attempted to lease it for oil and gas and an examination of the abstract revealed the note from King to Hart. He sought a release or quitclaim from Hart, and upon refusal by Hart, this suit was filed. Winsett testified that he never knew either the Kings or Hart during the times of the transactions between them, and it

it would necessarily follow that he did not know that the Kings had been absent from the state during the period after maturity of the note—a condition that would toll limitation on the note as between Hart and the Kings, under Art. 5537, Vernon's Ann. Tex.Civ.St.

The last cited Article of the statutes provides, in effect, that if a person is absent from the state a portion of the time after a cause of action accrues against him, the time he is so absent will not be included in the period of limitation, when sued by one in whose favor the cause of action has accrued.

There is no question but that the Kings had been absent from the state since the maturity of their note to Hart, a sufficient portion of the time so that they could not successfully plead limitation against one properly suing thereon. It is contended by' Hart in the instant suit that because the note was not in fact and in law barred by the statute of limitation, because of King's absence from the state, the subsequent purchase by Winsett more than four years after the maturity of the note, as disclosed by the recorded deed, did not pass the title to the purchaser under the provisions of Article 5520, Vernon's Ann.Tex.Civ.St.

The last cited article in effect provides that such obligations as the one asserted by Hart in this case shall be conclusively presumed to have been paid upon the expiration of four years from and after the maturity date shown in the instrument evidencing it, unless it shall have been renewed and extended by an instrument in writing by the person primarily liable therefor. It further provides that under such conditions the lien securing the debt shall cease to exist after four years from maturity. There is no contention made here by Hart that any renewal or extension was ever made by the Kings.

■ Article 5520 is a part of Title 91 covering limitations. The general statute under this title dates back to the beginning of our jurisprudence. Beginning with 1905, amended in 1913 and again in 1931, the Legislature began enacting laws pertaining to real estate liens covered by the Title, resulting in Article 5520 as it existed at the time in controversy and now. The purpose of its enactment was for the protection of third persons who may acquire a lien on land or purchase it more than four years after the maturity date shown in the original instrument or one subsequently executed renewing and extending the date of

maturity. Wilkinson v. First Nat'l Bank, Crosbyton, 118 Tex. 202, 13 S.W.2d 346, 348; City Nat'l Bank of Houston v. Moody, Tex.Civ.App., 115 S.W.2d 745, writ dismissed; Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329; Yates et al. v. Darby, 133 Tex. 593, 131 S.W.2d 95; Texas Land & Mortgage Co., Ltd., v. Cohen, 138 Tex. 464, 159 S.W. 2d 859, adopted by the Supreme Court.

■ In construing those parts of Article 5520 here under consideration, the Commission of Appeals held, in McKinney v. Freestone County, Tex.Com.App., 291 S.W. 529, 532, that it was more than a statute of limitation, but that the language used, "the purchase money therefor shall be conclusively presumed to have been paid", is not that of limitation at all; that it establishes a definite rule of evidence, and makes final and conclusive the presumption of payment by reason of the lapse of time. Citing Pecos Mercantile Co. v. McKnight, Tex. Civ.App., 256 S.W. 933, writ refused. By a very persuasive course of reasoning, one Court of Civil Appeals (West's Ex'rs v. Cameron County, 4 S.W.2d 111) declined to follow the rule announced in McKinney v. Freestone County, supra, and held the Legislature had no authority under the Constitution to pass such a law. The Supreme Court granted a writ of error and reversed that holding, West's Ex'rs v. Cameron County, 14 S.W.2d 836. The rule announced in the McKinney case was followed in Loving County v. Higginbotham, Tex. Civ.App., 115 S.W.2d 1110, writ denied. In Yates et al. v. Darby, 133 Tex. 593, 131 S. W.2d 95, at page 99, Legislative authority to create such conclusive presumption of payment as was done in Article 5520, Vernon's Ann.Civ.St. was upheld in this language: "The legislative act may create such conclusive presumption, because in so doing it merely fixes a period of time after the expiration of which the vendor may not exercise any remedy for the enforcement of the superior title."

■ In the last cited case it was also held that Article 5520 is not limited to suit brought by a vendor to enforce a lien or to recover the land and that to so construe it would be to defeat the purposes for which it was enacted.

From the foregoing authorities then, it may be safely said that Article 5520 lays down a rule of evidence, which establishes in the instant case that since more than four years elapsed between the date of maturity

of King's note to Hart and the time when Winsett took the land by conveyance from King, it is conclusively presumed that the note was paid, absent a written renewal and extension of maturity. It must be conceded, however, that the note was not in fact paid, yet for the protection of third persons whose rights have, intervened as did those of Winsett (the purpose for which Article 5520 was enacted) it will be conclusively presumed by law that the note was paid and the lien discharged, and Winsett could rely upon it. The conclusive presumption of payment gave Winsett the same protection as if the note had in fact been paid.

Yates et al. v. Darby, 133 Tex. 593, 131 S.W.2d 95, at page 99, involved a rather complicated state of facts, but in discussing priority of rights under the provisions of the statutes before us, the court said in part: "The effect of such conclusive presumption of payment, like the effect of actual payment, is to terminate the superior title retained by the vendor, and consequently to terminate all remedies for the enforcement of such superior title. * * * The vendor's superior title ipso facto terminates upon the payment of the purchase money notes. Termination of the superior title is as effectively and as completely accomplished when by the force of the statute a conclusive presumption of payment of the note arises at the end of four years after its maturity."

The question raised by appellant Hart in his brief appears to be that because King's note was not in fact barred by limitation, on account of King's absence from the state during the limitation period, the provisions of Article 5520 by which payment would be conclusively presumed after four years from the record maturity date of the indebtedness, is not applicable in this case. So far as we have been able to find from the authorities cited by counsel and those found by us, the precise question has not been adjudicated by our courts. But we believe that from what has been said by our courts in the cases above cited, we must give effect to the plain language of Article 5520 as written. If the Legislature had intended by enacting the last cited article that it should be effective only if the previous indebtedness was in fact barred by limitation, it would have. so stated, instead of fixing the period as it did after which the debt and lien would· be conclusively presumed to have been paid and discharged.

To give the Act the construction contended for by appellant would mean that a purchaser would have to investigate and pass upon a probable controversial state of facts (which in some instances might be difficult for courts to determine) before he could know whether or not the indebtedness shown of record was in fact barred by limitation. We cannot believe this was the legislative intent.

As above indicated, we believe the trial court properly decided this case, and the judgment is therefore affirmed.