**Elizabeth H. STROUD et vir, Appellants,**

**v.**

**E. S. JONES, Appellee.**

**No. 6022.**

Court of Civil Appeals of Texas. Beaumont.

Oct. 4, 1956.

Rehearing Denied Oct. 31, 1956.

Charles K. Ruth, Dies, Anderson & Dies, Lufkin, for appellants.

Curtis W. Fenley, William D. Perkins, Lufkin, for appellee.

ANDERSON, Justice.

The suit, in form of trespass to try title, was brought by appellant Elizabeth H. Stroud and her husband John Stroud against appellee E. S. Jones to recover the west half of a 47¼ acre tract of land in Angelina County, a part of the A. Vincent Survey. The defendant answered by plea of not guilty. Trial to the court resulted in a judgment that plaintiffs take nothing.

The parties claim under an agreed common source of title, G. T. Kirkpatrick, who, together with his wife, by general warranty deed dated March 28, 1924, conveyed the 47¼ acres to C. J. Bentley, but expressly reserved a vendor's lien to secure payment of three notes that Bentley executed and delivered to Kirkpatrick as part consideration for the conveyance, said notes being each in the principal sum of $100 and maturing, respectively, on January 1, 1925, 1926, and 1927.

C. J. Bentley and wife then conveyed the east half of the 47¼ acre tract to W. M. Adams and Dessie Adams by general warranty deed dated June 7, 1924, expressly reserving a vendor's lien to secure payment of one note that the grantees executed and delivered to them as part consideration for the conveyance, which note was in the principal sum of $600 and was payable in annual installments of $100 each, the first installment to mature June 7, 1925.

And by general warranty deed dated July 5, 1924, C. J. Bentley and wife conveyed the west half of the 47¼ acre tract to the same William and Dessie Adams to whom they had previously conveyed the east half. As part consideration for this conveyance the grantees expressly assumed payment of the balance due on the three notes C. J. Bentley had theretofore executed and delivered to G. T. Kirkpatrick as part consideration for the 47¼ acres, and in addition they executed and delivered to C. J. Bentley their note for $100, which was payable in monthly installments of $15 each, the first installment to mature August 5, 1924.

The vendor's lien was expressly reserved in the deed to secure payment of "the above described note."

William and Dessie Adams then conveyed the entire 47¼ acres of land to R. J. Hunnicutt by general warranty deed dated August 28, 1924. All of the notes heretofore mentioned were referred to in this deed, which expressly provided that the grantee was purchasing subject to the notes and to the liens securing their payment but was not to become personally liable for the payment of any of the notes. The deed recited payment by the grantee of a cash consideration of $400, and no lien was expressly retained in it for any purpose.

At some later undisclosed date, C. J. Bentley instituted suit in the district court of Angelina County against "Robert J. Honeycutt" and William and Dessie Adams, which said cause was styled "C. J. Bentley Vs. Robert J. Honeycutt, Et. Al.," and numbered 4078 on the civil docket of said court. The original petition that was filed in said cause is not before us, but an amended original petition that the plaintiff Bentley filed therein on September 24, 1925, and upon which the case was apparently tried, does appear in the statement of facts. In said amended petition the plaintiff averred that on or about July 5, 1924, the defendants William and Dessie Adams had executed and delivered to him their promissory note for $100, payable in installments of $15 each, the first installment to be due thirty days after July 5, 1924, and one installment to become due each thirty days thereafter until all of them had matured, and that on June 7, 1924, the same two defendants had executed and delivered to him their promissory note for $600, payable on or before six years after date, in annual installments of $100 each, the first installment payable June 7, 1925; that the $100 note provided that failure by its makers to pay it or any installment of it when due should mature all of the makers' indebtedness to plaintiff; that the makers had failed to pay the $100 note, and plaintiff had elect-

ed to declare all of their indebtedness to him due and payable; that "he accordingly brings this suit against said defendants, William and Dessie Adams for the sum of Seven Hundred Four ($704.00) Dollars," etc.; that defendants W. M. and Dessie Adams had conveyed to defendant Robert J. Honeycutt the land and premises for which said notes had been given in payment, said conveyance having been expressly made subject to the indebtedness evidenced by the notes; that the notes had been given in part payment for the following described tract of land: "That certain tract or parcel of land situated in Angelina County, Texas, being the East one-half of a tract of land containing 47¼ acres out of a portion of the A. Vincent Survey, together with the improvements thereon, and being more fully described in a deed from plaintiff to William Adams and Dessie Adams, which is duly recorded in the Deed Records of Angelina County, Texas, reference to which is made for particular description"; that, to secure payment of the notes, the plaintiff had retained "the superior title to said land," and because default had been made on payment of the notes he was entitled "to rescind said contract of sale, and to have the title to said land adjudicated into him, and the cloud cast upon his title thereto, by virtue of his contract of sale with the defendants, removed therefrom, and accordingly he sues for the superior title to said land"; that, in the alternative, plaintiff was holder of the vendor's lien on said land and entitled to have it foreclosed. Plaintiff prayed that "he have judgment for the title and possession of said land, and recision of said sale, but in the alternative if this be denied, then, for foreclosure of the Vendor's Lien, and order of sale for costs of suit," and for general relief.

Judgment was rendered in the aforesaid cause on October 27, 1925. It recites that the defendants had been duly served with process but had failed to appear or answer and had wholly made default, and then continues:

"* * * and the court, after hearing the evidence is of the opinion that the plaintiff is entitled to judgment by default, against each of the defendants, this being a suit for the superior title, to the hereinafter described tract of land, and accordingly, said judgment is granted.

"It is therefore ordered, adjudged and decreed, by the court that the plaintiff, C. J. Bentley, do have and recover of and from the defendants, Robert J. Honeycutt, W. M. Adams and Dessie Adams, each of Brazos County, Texas, the title to and possession of the following described tract of land, to-wit:

"That certain tract or parcel of land, situated in Angelina County, Texas, being the East one half of a tract of land, containing 47¼ acres out of a portion of the A. Vincent Survey, together with the improvements thereon, and being more fully described in a deed from plaintiff to William Adams and Dessie Adams, which is duly recorded in the deed records of Angelina County, Texas, reference to which is made for particular description.

"And the title to said land is hereby divested out of the said Robert J. Honeycutt, W. M. Adams and Dessie Adams, and is hereby vested in said C. J. Bentley.

"* * * and the plaintiff may have his writ, or writs of possession."

After the aforesaid judgment had been rendered, C. J. Bentley and wife conveyed the east half of the 47¼ acre tract to A. Z. Runnels by warranty deed dated January 11, 1926. Then later, by special warranty deed dated February 21, 1929, they purported to convey the entire 47¼ acres to J. D. Blackburn, reserving one-fourth of the oil, gas and other minerals in the land.

To show title in plaintiff Elizabeth H. Stroud, plaintiffs introduced in evidence the six instruments first above mentioned: (1) The deed from G. T. Kirkpatrick and wife to C. J. Bentley by which the entire 47¼ acres were conveyed; (2) The deed

dated June 7, 1924, from C. J. Bentley and wife to W. M. and Dessie Adams by which the east half of the 47¼ acre tract was conveyed; (3) The deed dated July 5, 1924, from C. J. Bentley and wife to William and Dessie Adams by which the west half of the 47¼ acre tract was conveyed; (4) The deed from William and Dessie Adams to R. J. Hunnicutt by which the entire 47¼ acres were conveyed; (5) The amended original petition filed by Bentley in his suit against "Robert J. Honeycutt" and the Adamses; (6) The judgment that was rendered in said suit. They then proved that both R. J. Hunnicutt and his wife had died intestate (R. J. in 1949, and Mrs. Hunnicutt in 1932), leaving plaintiff Elizabeth H. Stroud as their sole heir at law.

For the purpose of proving title in himself, the defendant reintroduced in evidence the same six instruments the plaintiffs had introduced, and in addition he introduced the deed of January 11, 1926, by which C. J. Bentley and wife conveyed the east half of the 47¼ acre tract to A. Z. Runnels; the deed of February 21, 1929, by which C. J. Bentley and his wife ostensibly conveyed to J. D. Blackburn the entire 47¼ acres, less one-fourth of the minerals; deeds by which J. D. Blackburn acquired the title of A. Z. Runnels to the east half of the 47¼ acre tract; and deeds by which he himself acquired the title of J. D. Blackburn to at least the east half of the 47¼ acre tract. The deeds in the series last mentioned each represented that 47¼ acres were being conveyed, but the instruments to which reference was made in each for description covered only the east half of the tract.

It is to be noted that the east and west halves of the 47¼ acre tract were conveyed by C. J. Bentley and wife to William and Dessie Adams as separate tracts of land and for different considerations, the east half by one deed, and the west half by another; that, although the $100 note

the Adamses gave in exchange for the west half of the tract was to some extent declared upon in the suit Bentley filed and prosecuted against "Robert J. Honeycutt" and William and Dessie Adams in 1925, the land itself—i. e., the west half of the 47¼ acre tract—was neither described nor referred to in either the plaintiff's petition or the judgment in that suit; and that R. J. Hunnicutt did not himself convey the land away after receiving from the Adamses the deed of August 28, 1924, to the whole of the 47¼ acres. These are the salient facts on which appellants base their claim of title.

Since findings of fact and conclusions of law were neither requested nor filed, and the judgment itself does not disclose the reasoning that gave rise to it, we are not with certainty apprised of the particular considerations that prompted the trial court to rule in favor of the defendant. It is reasonably certain, however, that the judgment was rendered on the theory that the deed of July 5, 1924, by which C. J. Bentley and wife conveyed the west half of the 47¼ acre tract to William and Dessie Adams, expressly reserving a vendor's lien, was but an executory contract of sale that left the superior title to the land vested in the grantors, a contract that was subject to be rescinded by the grantors for failure of the grantees to pay the $100 purchase-money note, and that was in fact rescinded by them by their deed of February 21, 1929, to J. D. Blackburn, by which they ostensibly conveyed to Blackburn the entire 47¼ acres of land. In any event, such is the theory on which appellee relies to support the judgment.

The basic principles of law involved in appellee's theory are well established. Tom v. Wollhoefer, 61 Tex. 277; Johnson v. Smith, 115 Tex. 193, 280 S.W. 158; Rooney v. Porch, Tex.Com.App., 239 S.W. 910; Yates v. Darby, Tex.Com.App., 133 Tex. 593, 131 S.W.2d 95, opinion adopted; 43-A Tex.Jur. 554-5, Vendor and Purchaser, sec.

515. Appellants concede this to be true, but contend that because of matters to which they direct attention the Bentley-Blackburn deed cannot be given the effect claimed for it by appellee and apparently accorded it by the trial court.

By their first point appellants urge that the judgment "is contrary to law and the evidence, in that the holder of the vendor lien notes and the superior title exercised his option by filing suit against plaintiff's father, R. J. Honeycutt, in 1925 and thereby affirmed the executory contract and vested title to the tract of land in controversy in plaintiff's father in said suit." The point is overruled. While it is well established that by electing to affirm the contract of sale and have judgment for his debt and a foreclosure of his vendor's lien a vendor who is the holder of superior title under a vendor's lien that has been expressly reserved loses his right to disaffirm or rescind the contract and recover the land, Hill v. Preston, 119 Tex. 522, 34 S.W.2d 780, this results from his election between inconsistent remedies and not from the mere fact that he resorts to the courts. It was only in the alternative, in the event he should be denied recovery of the land itself, that Bentley sought to recover on the notes and to foreclose his vendor's lien; he primarily sued to rescind the executory contract of sale and to recover title to the land described in his petition, and this was the relief granted him. The suit did not have the effect, therefore, of affirming the executory contract of sale.

In their second point appellants aver that the trial court "erred in rendering judgment for defendant because said judgment is contrary to law in that the holder of the vendor lien notes abandoned his claim, if any he had, to the tract of land in controversy after 1925." C. J. Bentley testified that after the conclusion of his law suit in 1925 he no longer claimed any interest in the west half of the 47¼

acre tract and even looked after it for Dr. Hunnicutt. Appellants argue that this testimony was uncontradicted and must be taken as true and as establishing that Bentley abandoned and thereby lost all rights he had to the land. We are unable to agree that the trial court was obliged to accept the testimony as true, and must presume in favor of the judgment that it declined to do so. Bentley was shown to be an interested witness. It was through him that Mrs. Stroud first learned that she possibly owned the land, and she testified not only that she had agreed to sell the land to him if she gained it, but that Bentley had procured an attorney to represent her in the suit. Furthermore, the testimony in question was inconsistent with Bentley's act in deeding all of the 47¼ acres to Blackburn in 1929. It was likewise inconsistent with his claim of an interest in the minerals in the land in controversy, when the only basis for such claim was the reservation he made in his deed to Blackburn. Since we must reject the major premise of appellants' argument, we overrule the point without further discussion.

In their third point appellants say the trial court "erred in rendering judgment for the defendant because the defendant stated in open court that he was relying on record title and is thereby bound by the instruments in his chain of title." Appellants take the position that, having stated that he was relying on record title, the defendant was obliged to prove that he actually held the better record title or at least a record title of sorts, but failed to do so. The statement by defense counsel on which the point is based appears to have been made for no other purpose than to apprise the court and opposing counsel that the defendant was waiving his pleas of limitation and relying altogether on his plea of not guilty. But whatever the purpose for which the statement was made, the fact remains that the action was in form of trespass to try title, and the defendant

had on file his plea of not guilty. Therefore, the plaintiffs could recover only on the strength of their own title and not upon the weakness of the defendant's title. 41–A Tex.Jur. 665, Trespass to try title, sec. 138. The point is overruled.

■■ By their fourth point appellants assert that the trial court erred "in refusing to reopen the case and allow C. J. Bentley, plaintiff in the law suit of 1925, to testify that the defendant of that law suit, R. J. Honeycutt, had satisfied the indebtedness and had paid the holder of the vendor's lien for the tract of land in controversy." The point is overruled. There is no bill of exception in the record to show that C. J. Bentley would have so testified if given the opportunity and so no error is presented. Furthermore, even assuming that Bentley would have testified as claimed, we think no abuse of the trial court's discretion in the matter is reflected by the record. The proposed evidence would have been at variance with the theories on which plaintiffs had tried the case; it would have been supplied by one who, as already pointed out, was interested in the result of the suit; Bentley had already testified at length and upon three different occasions during the trial, having been called by the plaintiffs each time; and the only excuse the plaintiffs offered for not having introduced the proposed evidence before resting their case was that the theory on which the defendant was defending the suit did not become apparent to them until defense counsel argued the case to the court. We think it can hardly be said in the circumstances that it was clearly necessary to a due administration of justice that plaintiffs be permitted to reopen the case and introduce the additional evidence. Rule 270, Texas Rules of Civil Procedure.

■ Appellants' fifth point avers that the trial court "erred in rendering judgment for the defendant because the holder of vendor lien notes and the superior title

is estopped from rescinding the executory contract after he has made a sale of a portion of the land covered by the vendor lien notes." The argument that appellants make under the point is basically the same as that they made under their first point, and fails, for reasons already stated, to demonstrate error. If it is appellants' theory that by conveying the east half of the land to Runnels in January of 1926 Bentley estopped himself from thereafter conveying the west half to Blackburn, we point out that Bentley's rights as regards the east and west halves of the tract were governed by separate and distinct deeds or contracts. The point presents no error and is overruled.

■ In their sixth and last point appellants say the trial court "erred in entering judgment that did not dispose of all issues of the parties in the pleadings." They question the finality of the judgment because it did not expressly mention or dispose of their claim for the value of timber the defendant had cut and removed from the land in suit. The judgment decreed that plaintiffs "take nothing by their suit," thereby effectively disposing of all claims asserted by plaintiffs in their pleadings. The point is overruled.

■ The foregoing disposes of the questions presented by appellants' points of error and their brief. Errors that are not assigned on appeal by points of error, or that are not briefed, are waived. See cases that are collated under notes 6, 7, and 22, Rule 418, Texas Rules of Civil Procedure. Further consideration has convinced us that matters with which we dealt in a former opinion were not properly before us for review. None of appellants' points raise generally either the question of a want of evidence or the question of the sufficiency of the evidence to support the judgment.

Appellant's motion for rehearing is granted;

The previous opinion of this court is withdrawn and the present opinion is substituted in its stead; the judgment of this court rendered pursuant to the earlier opinion is set aside and vacated; and the judgment of the trial court is affirmed.

Affirmed.